**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Paul Belke,<br><br>        Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin,<br>Acting Commissioner of Social Security,<br><br>        Defendant. | No. CV-13-0352-TUC-BGM<br><br><br><br>**ORDER** |

Currently pending before the Court is Plaintiff's Opening Brief (Doc. 23). Defendant filed her response (Doc. 24), and Plaintiff replied (Doc. 25). Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge has received the written consent of both parties, and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure.

**I.      BACKGROUND**

     ***A.      Procedural History***

On August 5, 2010, Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging disability as of June 29, 2010 due to high blood pressure, atrial fibrillation, tachycardia, diabetes

1 mellitus, colitis and hand tremors.[1] *See* Administrative Record ("AR") at 23, 55, 62-66, 72-
2 75, 129, 136, 149, 172, 174, 177, 193, 199-201, 232-35. The Social Security Administration
3 ("SSA") denied this application on January 10, 2011. *Id.* at 71, 79. On February 22, 2011,
4 Plaintiff filed a request for reconsideration, and on May 23, 2011, SSA denied Plaintiff's
5 request. *Id.* at 83-88. On July 14, 2011, Plaintiff filed his request for hearing. *Id.* at 89. On
6 March 1, 2012, a hearing was held before Administrative Law Judge ("ALJ") Laura Speck
7 Havens. *Id.* at 52. The ALJ issued an unfavorable decision on April 11, 2012. AR at 20-48.
8 Plaintiff requested review of the ALJ's decision by the Appeals Council, and on March 18,
9 2013, review was denied. *Id.* at 1-6, 17-19. On May 16, 2013, Plaintiff filed this cause of
10 action. Compl. (Doc. 1).

### B.     Factual History

Plaintiff was sixty-one (61) years old at the time of the administrative hearing, and fifty-nine (59) at the time of the alleged onset of his disability. AR at 56, 23, 72, 129, 136, 149, 193, 232. Plaintiff possesses a Bachelor of Arts degree in chemistry from Monmouth College and a Bachelor of Science degree in medical technology. *Id.* at 56,. Prior to his alleged disability, Plaintiff worked as a medical technologist. *Id.* at 56, 66, 154, 159-60. On May 29, 2010, Plaintiff retired at the age of fifty-nine and a half (59 ½) as an alleged result of his disability. *Id.* at 56-57.

At the administrative hearing, Plaintiff testified that he currently lives alone in a single family home. *Id.* at 58. Plaintiff further testified that he is able to do basic chores around the

---

[1]The Court notes that one Disability Report – Field Office – Form SSA-3367 (Exhibit 8E) notes a protective filing date of August 18, 2010 and "no initial level SSI claim on this case." AR at 183. Defendant clarified that:

> Initially, Plaintiff filed applications for both Title II disability insurance benefits and Title XVI supplemental security income (AR 129-39). The agency denied Plaintiff's Title XVI claim because he had too much income to be eligible (AR 94-99; *see also* AR 137 (indicating he received pension or dividend payments in excess of $20,000.00 monthly)). Plaintiff did not appeal the denial of his Title XVI application, and only his Title II application is at issue before this Court.

Def.'s Opp. to Pl.'s Opening Br. (Doc. 24) at 2 n. 1.

house and of daily living. AR at 58-60. Plaintiff testified that he does not garden or do yard work. *Id.* at 59. Plaintiff testified that his friend Leonard comes over once or twice a month to help him with tasks that Plaintiff cannot manage alone, including yard work or other activities that require significant physical effort. *Id.* at 59, 67. Plaintiff further testified that he reads and watches television, and does not exercise. *Id.* at 60. Plaintiff also testified that he although he has a driver's license, he cannot travel out of town. *Id.* at 60-61.

Plaintiff testified that he had lost approximately a hundred pounds in a little over a year due to poor appetite, but he has been able to gain five (5) to ten (10) pounds back. AR at 61. Plaintiff confirmed his medications including Digoxin for atrial fibrillation, Nadolol for tachycardia, Metformin for diabetes, Simvastatin for high cholesterol, and Omeprazole for Gastroesophageal Reflux Disease ("GERD"). *Id.* at 62. Plaintiff further testified that his blood sugar is currently controlled, but he does have occasional postural hypotension which can result in convulsions. *Id.* at 63. Plaintiff testified that he can walk for approximately fifteen (15) minutes while vacuuming and sit for about an hour. *Id.* Plaintiff further testified that he can lift a maximum of forty (40) pounds "because that's the weight of my dog's dog food and I have to bring that in so I do it in small increments." *Id.* Plaintiff explained that he moves it approximately ten (10) feet at a time and then rests. AR at 65. Plaintiff also testified that although his heart condition is controlled, if he has "either physical or psychological stress, [he] get[s] the arrhythmia back." *Id.* at 64. Plaintiff testified that he cannot take more medication because his blood pressure is already so low, so he has "to rest to bring the rhythm back to normal." *Id.* Plaintiff further testified that he stops, lays down and relaxes with deep breathing to control the arrhythmia. *Id.* at 66.

Plaintiff testified that the hand tremors are predominantly in his right hand. *Id.* Plaintiff further testified that the tremors were causing him increasing difficulty at work prior to retirement, because as a medical technologist fine manipulations were required. AR at 66. Plaintiff testified that his job required him to lift a twenty (20) liter box, which weighed approximately forty (40) pounds. *Id.* at 67. Plaintiff further testified that although he was

- 3 -

1 able to perform this task some days, on others he would have coworkers do it for him, and
2 on yet other days he would attempt to lift the box and become lightheaded and black out. *Id.*
3 Plaintiff testified that he lays down and rests at least two or three times a day, and does not
4 believe that he could work a forty (40) hour per week job at this point. *Id.* at 68.

5       Prior to the hearing, Plaintiff described his work as a medical technologist as
6 analyzing "blood and other body fluids in a medical setting[.]" AR at 154, 160. Plaintiff
7 further stated that this job involved the use of machines, tools or equipment; used technical
8 knowledge or skills; and involved writing, completing reports or other similar duties. *Id.* at
9 154, 160. Plaintiff stated that the job entailed walking for two (2) hours, standing for three
10 (3) hours, sitting for four (4) hours, stooping (bending down and forward at the waist) for one
11 (1) hour, kneeling (bending legs to rest on knees) for one (1) hour, crouching (bending legs
12 and back down and forward) for one (1) hour, handling large objects for one (1) hour,
13 writing, typing or handling small objects for four (4) hours and reaching for four (4) hours.
14 *Id.* at 155, 160. Plaintiff further indicated that the job did not entail any climbing or
15 crawling. *Id.* at 155, 160. Plaintiff stated that he had to lift liquid containers. *Id.* at 155, 160.
16 The heaviest weight lifted is noted as twenty (20) pounds, and that Plaintiff frequently lifted
17 twenty-five (25) pounds.[2] *Id.* at 155, 160. Plaintiff described his position as a lead worker,
18 but he did not supervise other people. *Id.* at 155, 160.

19       Ms. Ruth Van Vleet testified as the vocational expert at the administrative hearing.
20 *Id.* at 68. Ms. Van Vleet testified that she classified Plaintiff's previous employment as light,
21 skilled work, recognizing that Plaintiff reported that it was "somewhere between light to
22 medium on occasion." AR at 68. Ms. Van Vleet further testified that "if [Plaintiff] used
23 keyboard, computers[;] I'm sure he dealt with other people so that would lend itself to doing
24 a sending [sic] semi-skilled job such as a customer service rep." *Id.* at 68-69. Ms. Van Vleet
25 testified that the *Dictionary of Occupational Titles* ("*DOT*") number for a customer service

---

[2] It appears that Plaintiff transposed the answers to these questions.

- 4 -

1  representative is 299.357-014.³  *Id.* at 69.  Ms. Van Vleet further testified that this job is
2  sedentary, semi-skilled, with 348,626 jobs nationally and 12,836 in Arizona.  *Id.*  Ms. Van
3  Vleet further testified "[t]hat's the only job I could think of that someone with that skill set
4  could do."  *Id.*  Ms. Van Vleet also testified that the customer service representative position
5  has a specific vocational preparation ("SVP") of three (3).  AR at 69.  When asked by the ALJ
6  what skills are transferable "from the medical technician to this customer service rep[,]" Ms.
7  Van Vleet testified that "the only thing [she] could think of is that [Plaintiff's] got the basic
8  computer skills."  *Id.*  Ms. Van Vleet further testified that Plaintiff "probably dealt with the
9  public on occasion and other staff members.  Typically when you see somebody who can't
10 return to the type of job he did, you see them working into doing teaching at a tech school
11 or junior college but those start out on a per diem basis."  *Id.*  Ms. Van Vleet also testified
12 that a customer service representative position would not allow for breaks to lay down during
13 the day.  *Id.* at 69-70.
14       On May 27, 2009, Plaintiff was seen by Steven D. Vig, M.D. for a "fast irregular heart
15 rate for two weeks."  AR at 210.  Plaintiff's heart rate was noted at 130 to 140 beats per
16 minute, tachycardia, and atrial fibrillation present on the electrocardiogram ("EKG")
17 performed.  *Id.* at 210-11.  Plaintiff was given Digoxin and Warfarin, as well as a
18 prescription for the same, and referred to cardiology for a consult.  *Id.*
19       On June 8, 2009, Plaintiff was seen by Lionel Faitelson, M.C., F.A.C.C. "for
20 assessment of atrial fibrillation."  AR at 215-16, 222-23.  Dr. Faitelson's impression
21 indicated paroxysmal atrial fibrillation, with a recent persistent atrial fibrillation that
22 appeared to have resolved to normal.  *Id.* at 215, 22.  Dr. Faitelson confirmed Plaintiff was
23 to continue his current management, and return for an "echocardiogram and IV adenosine
24 thallium scan to exclude occult coronary disease."  *Id.*  Dr. Faitelson "would consider adding
25
26       ³This *DOT* number is for a "Telephone Solicitor (any industry) alternate titles: telemarketer;
   telephone sales representative[.]"  *DOT* 299.357-014, *available at*
27 http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02D.HTM; Pl.'s Opening Br. at 11.
28
                                              - 5 -

1  sotalol 80 mg p.o. b.i.d. for suppression of paroxysms of atrial fibrillation[.]" *Id.* On June
2  16, 2009, Plaintiff underwent a Regadenoson Spect Myocardial Perfusion Scan. *Id.* at 219.
3  "Both the stress and rest images of the left ventricle myocardium show[ed] a normal pattern
4  of radiotracer activity." AR at 219.  Further, "[t]he left ventricle size [was] normal relative
5  to patient stature although the walls appear somewhat thickened[,] [r]egional wall motion
6  [was] normal[,] [and] [i]n the SPECT images of the chest, extracardiac tracer uptake
7  appear[ed] normal." *Id.* On June 19, 2009, Plaintiff followed up with Dr. Faitelson. *Id.* at
8  217-18. Plaintiff's echocardiogram showed "preserved [left ventricular] ejection fraction
9  with borderline [left ventricular] diastolic dysfunction[,]" but was otherwise normal. AR at
10 217. Dr. Faitelson's impressions included paroxysmal atrial fibrillation, borderline systolic
11 hypertension, borderline left ventricular diastolic dysfunction, and nonspecifically abnormal
12 ST-T wave changed on EKG. *Id.* Dr. Faitelson recommended switching from Coumadin to
13 aspirin, and continue Plaintiff's current regimen without further changes.

14 On February 9, 2010, Plaintiff was evaluated by David D. Neal, M.D., FA.C.S. for an
15 infected sebaceous cyst on his right lower back. *Id.* at 214.

16 Pursuant to a request by the Commissioner, Brian Helmly, M.D. reviewed Plaintiff's
17 medical records and examined Plaintiff on November 6, 2010. *Id.* at 225-31. Plaintiff
18 "present[ed] with a history of atrial fibrillation complaining of fatigue." AR at 225. Plaintiff
19 further reported "the fatigue began after being placed on medication for atrial fibrillation."
20 *Id.* Plaintiff stated that his atrial fibrillation is well controlled with medication and that he
21 performs activities of daily living, but experiences fatigue with strenuous activity. *Id.*
22 Plaintiff reported being able to sit for one (1) hour and stand for twenty-five (25) minutes.
23 *Id.* Dr. Helmly found Plaintiff has Paroxysmal Atrial Fibrillation, which is well controlled
24 with medication; fatigue likely secondary to medication and recommended correlation with
25 thyroid-stimulating hormone; and orthostatic hypotension intermittently, likely secondary to
26 medication. AR at 227. Dr. Helmly noted a normal active range of motion in Plaintiff's
27 neck, back, sitting and supine straight leg raising, shoulder, elbow and forearm, wrist, hip,

1  knee, ankle and foot. *Id.* at 228-29. Dr. Helmly also noted normal active range of motion
2  in Plaintiff's hands and fingers, with normal grip and pinch in both left and right hands. *Id.*
3  at 229-30. Dr. Helmly noted normal strength proximally and distally in Plaintiff's upper and
4  lower extremities. *Id.* at 230. Dr. Helmly concluded that in his opinion "claimant should be
5  able to sit, walk, and/or stand for a full workday, lift/carry objects without limitations, hold
6  a conversation, respond appropriately to questions, [and] carry out and remember
7  instructions." *Id*. at 227.

8  On December 30, 2010, Plaintiff's medical records were also reviewed by Charles H.
9  Colvin, M.D. *Id.* at 232. Dr. Colvin noted that Plaintiff's medical records indicated a finding
10  of nonsevere. *Id.*

11  On January 21, 2011, Plaintiff was seen by William J. Laws, M.D. to establish a
12  primary care physician. AR at 238-41. Dr. Laws noted Plaintiff's history of colitis and atrial
13  fibrillation. *Id.* at 238. Dr. Laws's assessments included Type II diabetes, hyperlipidemia,
14  hypertension, atrial fibrillation, and colitis. *Id.* at 239. Plaintiff's physical examination was
15  unremarkable. *Id.* at 238-39. Dr. Laws further noted that Plaintiff's "[m]edication will be
16  adjusted, as his blood pressure is low and his blood sugar is high." *Id.* at 239. On February
17  4, 2011, Plaintiff was seen Dr. Laws for a two (2) week follow-up appointment. AR at 236-
18  37.

19  On June 15, 2011, Plaintiff was seen at University Physicians Healthcare ("UPH") for
20  an involuntary movement evaluation by Sudeshna Bose, M.D. *Id.* at 248-49. Dr. Bose noted
21  a fine fast tremor in outstretched hands. *Id.* at 249. As such, Dr. Bose noted a mild essential
22  tremor and that Nadolol which Plaintiff takes for blood pressure is "probably helping." *Id.*
23  at 250. Dr. Bose further noted "[m]ay try higher dose if tremor becomes a problem, watching
24  for hypotension." *Id.* Dr. Bose noted that Plaintiff's tremors were "[n]ot tardive" and "[m]ay
25  be early Parkinsons but without bradykinesia a diagnosis cannot be made." AR at 250. Dr.
26  Bose found that Plaintiff "[w]ould benefit from neuroimaging[,] but [he] wants to hold off
27  for financial reasons." *Id.* On June 30, 2011, Plaintiff saw Dr. Vig for a check-up regarding
28

1  his diabetes. *Id.* at 252-55. Dr. Vig noted Plaintiff's GERD, microscopic colitis, atrial
2  fibrillation, hyperlipidemia, hypertension, and chronic tremor. *Id.* at 252-54. Dr. Vig further
3  noted that Plaintiff "can't afford any tests, no insurance." *Id.* at 252.

4  On March 2, 2012, Dr. Vig completed a Medical Source Statement Regarding the
5  Nature and Severity of Impairments in regard to Plaintiff. AR at 257-61. Dr. Vig's
6  diagnoses included mild diabetes, smoking abuse, high lipids, and microscopic colitis. *Id.*
7  at 257. Dr. Vig also noted Plaintiff's fatigue. *Id.* Dr. Vig gave Plaintiff a "fair" prognosis.
8  *Id.* Dr. Vig noted that Plaintiff's impairments have lasted or could be expected to last at least
9  twelve (12) months. *Id.* Dr. Vig noted that Plaintiff is not a malingerer and his impairments
10 are "reasonably consistent with the symptoms and functional limitations described" in the
11 evaluation. *Id.* at 258. Dr. Vig stated that Plaintiff could tolerate a low stress job, that he can
12 sit for one (1) hour, and stand for fifteen (15) minutes before needing to change positions.
13 AR at 258. In an eight (8) hour work day, Dr. Vig noted that Plaintiff could walk/stand for
14 less than two (2) hours and sit for at least six (6) hours. *Id.* at 259. Dr. Vig further noted that
15 Plaintiff needed to walk around for sixty (60) minutes in an eight (8) hour work day, with
16 each period of walking lasting three (3) minutes. *Id.* Dr. Vig noted that Plaintiff requires a
17 job that permits shifting positions and he needs to take unscheduled breaks during an eight
18 (8) hour working day. *Id.* Dr. Vig estimated that this would happen once or twice per day
19 for approximately five (5) to ten (10) minutes. *Id.* Dr. Vig stated that Plaintiff could
20 occasionally lift less than ten (10) pounds, rarely lift ten (10) to twenty (20) pounds and
21 never lift fifty (50) pounds. AR at 259. Dr. Vig further stated that Plaintiff could
22 occasionally look down (sustained flexion of neck), turn head right or left, look up, and hold
23 head in static position. *Id.* at 260. Dr. Vig also stated that Plaintiff could rarely twist or
24 stoop (bend), and could never crouch or squat, climb ladders or climb stairs. *Id.* Dr. Vig
25 noted no significant limitations with reaching, handling or fingering. *Id.* Dr. Vig further
26 noted that Plaintiff's impairments would likely produce "good" and "bad" days, and that he
27 would be absent from work as a result of these impairments one (1) day per month. *Id.*

28

On March 7, 2012, Plaintiff saw Dr. Vig to discuss arrhythmia and disability. AR at 265-69. Plaintiff reported that his arrhythmia returns when he is under either psychological or physical stress. *Id.* at 265. Dr. Vig discussed additional treatment options, but Plaintiff said that he is unable to afford a lot of testing due to lack of medical insurance. *Id.*

## II.     STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance." *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted).

## III.    ANALYSIS

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). This process is defined as follows:

- 9 -

1  Step one asks is the claimant "doing substantial gainful activity[?]" If yes, the claimant is not
2  disabled; step two considers if the claimant has a "severe medically determinable physical
3  or mental impairment[.]" If not, the claimant is not disabled; step three determines whether
4  the claimant's impairments or combination thereof meet or equal an impairment listed in 20
5  C.F.R. Pt. 404, Subpt. P, App. 1. If not, the claimant is not disabled; step four considers the
6  claimant's residual functional capacity and past relevant work. If claimant can still do past
7  relevant work, then he or she is not disabled; step five assesses the claimant's residual
8  functional capacity, age, education, and work experience. If it is determined that the
9  claimant can make an adjustment to other work, then he or she is not disabled. 20 C.F.R. §
10 404.1520(a)(4)(i)-(v).

In the instant case, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and was not engaged in substantial gainful activity since June 29, 2010. AR at 25. At step two of the sequential evaluation, the ALJ found that "[t]he claimant has the following severe impairments: diabetes mellitus and colitis (20 CFR 404.1520(c))." *Id.* The ALJ further found that "[t]here is objective evidence in the medical record that the claimant has been evaluated and treated for atrial fibrillation and tachycardia. However, these conditions were being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance[,]" and therefore are nonsevere. *Id.* At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* at 26. The ALJ found that:

> After careful consideration of the entire record, . . . claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) specifically as follows: the claimant can sit for six hours in an eight-hour workday; the claimant can stand and/or walk for two hours each in an eight-hour workday; the claimant can lift and/or carry ten pounds frequently and the claimant can perform occasional postural activity.

*Id.* At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant

- 10 -

work (20 CFR 404.1565)." *Id.* at 29. At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d))." *Id.* Thus, "[t]he claimant has not been under a disability, as defined in the Social Security Act[.]" *Id.* Plaintiff asserts that 1) substantial evidence does not support the ALJ's finding that very little vocational adjustment would be necessary for Plaintiff to transfer skills to significant numbers of jobs for the purpose of 20 CFR Part 404, Subpart P, Appendix 2, Table 1, § 201.00(f) (2013); and 2) the ALJ violated SSR 00-4p in incorrectly relying on the Vocational Expert's incorrect testimony that a *DOT* telephone solicitor is a customer service representative. Pl.'s Opening Br. (Doc. 23) at 5, 9.

### *A. Step Five and the Section 201.00(f) Requirement*

"Based on the testimony of the vocational expert, [the ALJ] conclude[d] that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." AR at 30. Further, the ALJ stated that "[t]he vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.* Plaintiff asserts that the ALJ "incorrectly stated that the vocational expert provided such testimony[,] . . . [and] [t]herefore, there is no substantial evidence to justify finding Belke not disabled based on skill transferability under § 201.00(f) and Rule 201.07." Pl.'s Opening Br. at 7-8.

"At step five, the Commissioner must establish that the claimant is capable of performing substantial gainful work." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009). Where a Plaintiff's residual functional capacity does not allow him to do any of his past relevant work, this burden includes "providing evidence that demonstrates that other work exists in significant numbers in the national economy that [Plaintiff] can do, given

- 11 -

[his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2) (2013). The Commissioner can meet this burden in two ways, "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original) (citations omitted). Section 201.00(f) mandates that "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.00(f).

The Ninth Circuit has recognized "that a person of advanced age has 'little time to learn a new skill and apply it to a new job.'" *Renner v. Heckler*, 786 F.2d 1421, 1424 (9th Cir. 1986) (quoting *Weaver v. Secretary of Health & Human Services*, 722 F.2d 310, 312 (6th Cir. 1983). Accordingly, the Commissioner must show "that elderly claimants have skills which are 'directly transferable' in order to overcome a presumption of disability[,] [and] [t]hose skills must be 'particularly transferable' or constitute a 'substantial vocational asset.'" *Id.* (citations omitted). In adopting the reasoning of *Weaver*, the Ninth Circuit required the ALJ to make a finding of "'very little vocational adjustment' or otherwise acknowledge that a more stringent test is being applied which takes into consideration appellant's age." *Id.*; *see also Bray*, 554 F.3d at 1224 ("Neither the ALJ's decision nor the VE's testimony addresses whether Bray – who was one month from turning 55 at the time of her hearing – would have to undergo more than minimal 'vocational adjustment' to perform successfully the tasks required of a file clerk, general clerk, or sales clerk, or otherwise determined whether the skills required of an insurance underwriter are substantially similar to those required of a general, file, or sales clerk.").

Social Security Ruling ("SSR") 82-41 provides additional guidance. SSRs "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Molina v. Astrue*, 674 F.3d 1104, 1114 n. 5 (9th Cir. 2012) (quoting *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009)); *see also* 20 C.F.R. § 402.35(b) (2013). "They 'reflect the

- 12 -

official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (alteration in original) (*quoting Bray*, 554 F.3d at 1224) (internal quotations omitted). SSR 82-41 provides in relevant part:

> [4(c)]. *Special provisions made for transferability.* To find that an individual who is age 55 or over and is limited to sedentary work exertion has skills transferable to sedentary occupations, there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry. The same is true for individuals who are 60 and older and are limited to light work exertion. Individuals with these adverse vocational profiles cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of skill similarity with their [past relevant work ("PRW")]. In order to establish transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.

SSR 82-41, 1975-1982 Soc. Sec. Rep. Serv. 847, 853, 1982 WL 31389, *5 (S.S.A.).

In making her determination, the ALJ stated that "[t]he claimant has acquired work skills from past relevant work (20 CFR 404.1568)[,] [and that] [t]he vocational expert testified that the claimant's past relevant work as a medical technologist was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: computer skills." AR at 29. In response to the ALJ's question regarding transferable skills to sedentary work at the hearing, Ms. Van Vleet testified, "I believe, if he used computers, then yes. You know, if he used keyboard, computers." *Id.* at 68. When asked more specifically regarding skills that would be transferable from medical technologist to customer service representative, Ms. Van Vleet responded, "[l]ike I said, the only thing I could think of is that he's got the basic computer skills." *Id.* at 69. Ms. Van Vleet went on to state that "[h]e's probably dealt with the public on occasion and other staff members. Typically when you see somebody who can't return to the type of job he did, you see them working into doing teaching at a tech school or junior college but those start out on a per diem basis." *Id.*

As an initial matter, Defendant agrees with Plaintiff that "[t]he vocational expert did not testify that Plaintiff's prior work as a medical technologist was 'so similar' to the job of

- 13 -

1 customer service representative that Plaintiff 'would need to make very little, if any, 2 vocational adjustment in terms of tools, work processes, work settings, or the industry[.]" 3 Def.'s Opp. to Pl.'s Opening Br. (Doc. 24) at 6 (citation omitted).  Defendant asserts that 4 "[t]he vocational expert in this case has been providing expert testimony for nearly 20 years 5 and assuredly has a familiarity with the agency's regulations[.]" *Id.* at 7.  Defendant further 6 states that "the vocational expert contemplated the relevant vocational factors[,] but 7 concluded that these factors did not preclude Plaintiff from performing other work." *Id.*  A 8 review of the record, however, does not support Defendant's conclusion.  Ms. Van Vleet 9 provided limited testimony, which does not support the high standard for individuals of 10 advanced age established by § 201.00(f), the Ninth Circuit decisions, and SSR 82-41. 11 Furthermore, the ALJ failed to cite any evidence other than the vocational expert's testimony 12 for her vocational-adjustment finding.  Accordingly, the record is insufficient to for this 13 Court to determine whether substantial evidence supports the ALJ's finding the Plaintiff was 14 not disabled.

### B.     *Vocational Expert*

16 Based on the testimony of the vocational expert, the ALJ stated that "[t]he customer 17 service representative, DOT 299.357-014, is a sedentary, semiskilled (SVP 3) occupation 18 and there are 12, 836 such positions in the regional economy and 348, 626 such positions in 19 the national economy for an individual with the claimant's age, education, work experience, 20 and residual functional capacity." AR at 30.  Further, the ALJ found that "[p]ursuant to SSR 21 00-4p, the undersigned has determined that the vocational expert's testimony is consistent 22 with the information contained in the Dictionary of Occupational Titles." *Id.*  Plaintiff 23 asserts that the ALJ's reliance on the vocational expert's incorrect testimony resulted in a 24 failure to comply with SSR 00-4p.  *See* Pl.'s Opening Br. at 9-13.

25 SSR 00-4p "emphasizes that before relying on [vocational expert ("VE")] or 26 [vocational specialist ("VS")] evidence to support a disability determination or decision, our 27 adjudicators must:  Identify and obtain a reasonable explanation for any conflicts between

- 14 -

occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and Explain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, *1 (S.S.A.). Furthermore, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2. It is the adjudicator's duty to fully develop the record. *Id.* "Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict[;] [t]he adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." *Id.* SSR 00-4p "explicitly requir[es] that the ALJ determine whether the expert's testimony deviates from the *Dictionary of Occupational Titles* and whether there is a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2009).

At the administrative hearing the vocational expert testified that "if [Plaintiff] used keyboard, computers[;] I'm sure he dealt with other people so that would lend itself to doing a sending [sic] semi-skilled job such as a customer service rep." *Id.* at 68-69. Ms. Van Vleet further testified that the *DOT* number for a customer service representative is 299.357-014. *Id.* at 69. Ms. Van Vleet also testified that this job is sedentary, semi-skilled, with 348,626 jobs nationally and 12,836 in Arizona. *Id.* Subsequently, the ALJ relied on Ms. Van Vleet's testimony in finding Plaintiff not disabled.

The *DOT* number cited by Ms. Van Vleet, however, was for a "Telephone Solicitor (any industry) alternate titles: telemarketer; telephone sales representative[.]" *DOT* 299.357-014, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02D.HTM; Pl.'s Opening Br. at 11. The *DOT* description for telephone solicitor states:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise. GOE: 08.02.08 STRENGTH: S GED: R3 M3 L3 SVP: 3 DLU: 88

*DOT* 299.357-014, *available at*

http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02D.HTM.

As an explanation for this misstatement, Defendant states, "[a]lthough the vocational expert did not use the *DOT's* precise label for the job, it appears as though the vocational expert was speaking in a colloquial manner." Def.'s Opp. to Pl.'s Br. (Doc. 24) at 9. Defendant further states that "[s]ignificantly, SSR 00-4p aims to address inconsistencies between vocational expert testimony and the *DOT* when such inconsistencies relate to the specific functional demands required by jobs that an ALJ finds a claimant can perform[.]" *Id.* at 10. Defendant argues that "[a]s the vocational expert's testimony as to functional demands and transferability of skills was consistent with the *DOT*, the ALJ reasonably relied on that testimony." *Id.*

As discussed *supra*, the vocational expert's testimony was limited, and did not properly address the functional demands and transferability of skills as urged by Defendant. The ALJ then made findings that are unsupported by the record based on the vocational expert's testimony. Nor did the ALJ inquire whether the vocational expert's testimony was consistent with the *DOT*. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Nothing in the rules relieves the ALJ of the responsibility of ensuring that there was no conflict, even if the vocational expert testified that [Plaintiff] could perform other jobs."). Moreover, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009)

- 16 -

1 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)).
2 Similarly, this Court will not intuit what the vocational expert was thinking. The ALJ did
3 not fulfill her responsibility to fully develop the record.

4     *C.*     *Remand*

5 "'[T]he decision whether to remand the case for additional evidence or simply to
6 award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763
7 (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for
8 further administrative proceedings is appropriate if enhancement of the record would be
9 useful." *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel,*
10 211 F.3d 1172, 1178 (9th Cir. 2000)).

11 The record developed below is inadequate to establish whether, in light of Plaintiff's
12 advanced age, very little, if any, vocational adjustment would be required for skill
13 transferability. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1229 (9th Cir.
14 2009); *Renner v. Heckler*, 786 F.2d 1421, 1425 (9th Cir. 1986). As such, this Court cannot
15 properly determine whether substantial evidence supports the ALJ's finding of not disabled.
16 *See id.* Furthermore, the ALJ must apply SSR 00-4p's requirements and fully assess whether
17 the job identified by the vocational expert is consistent with the definition in the *Dictionary*
18 *of Occupational Titles* and Plaintiff's limitations. *See Massachi v. Astrue*, 486 F.3d 1149,
19 1155 (9th Cir. 2007). Accordingly, the Court will remand this matter to the Commissioner
20 for further proceedings.

21

22 **IV.**     **CONCLUSION**

23 In light of the foregoing, the Court REVERSES the ALJ's decision and the case is
24 REMANDED for further proceedings including obtaining additional vocational expert
25 testimony to assess whether, in light of Plaintiff's advanced age, very little, if any, vocational
26 adjustment would be required for skill transferability as required by § 201.00(f), the Ninth
27 Circuit decisions, and SSR 82-41. *See Renner v. Heckler*, 786 F.2d 1421, 1425 (9th Cir.

28

1986). The ALJ must also apply SSR 00-4p's requirements and fully assess whether the job identified by the vocational expert is consistent with the definition in the *Dictionary of Occupational Titles* and Plaintiff's limitations.

Accordingly, IT IS HEREBY ORDERED that:

1) Plaintiff's Opening Brief (Doc. 23) is GRANTED;

2) The Commissioner's decision is REVERSED and REMANDED; and

3) The Clerk of the Court shall enter judgment, and close its file in this matter.

DATED this 24th day of September, 2014.

Bruce G. Macdonald
United States Magistrate Judge